UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SOFIA V. WANGNET,

        Plaintiff,

v.                                                         Case No. 06-C-1177

GOODWILL INDUSTRIES OF NORTH
CENTRAL WISCONSIN, INC.,

        Defendant.

## DECISION AND ORDER

Plaintiff Sofia V. Wangnet sued her former employer, Goodwill Industries of North Central Wisconsin, Inc. ("Goodwill"), claiming sexual harassment via the creation of a hostile work environment, as well as for constructive discharge, and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. Under a collaborative program with the Wisconsin Department of Corrections, individually selected minimum security inmates from one of Wisconsin's correctional facilities also worked at Goodwill as part of a work release program during the time of Wangnet's employment there. On the basis of two separate incidents involving what she perceived as sexual harassment by her inmate co-workers, Wangnet alleges that Goodwill created a hostile work environment, and that Goodwill continued to employ selected inmates to retaliate against Wangnet, which constructively forced her termination. Goodwill has now moved for summary judgment. Finding her claims completely lacking in merit, Goodwill's motion for summary judgment will be granted and this action dismissed.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). The nonmoving party must "set out specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted).

In this case, the undisputed facts are easily ascertained. Plaintiff has not responded to Goodwill's proposed findings of fact, and so under the local rules they are accepted as true. See Civil L.R. 56.2(e). I will briefly recount them.

**FACTS**

Goodwill is a non-profit human services organization that employs, trains, and provides other assistance to both disabled and non-disabled people. (DPFOF ¶ 1.) It finances its operations

2

through the sales of new and used goods at various retail locations in the Eastern District of Wisconsin, including its principal place of business in Menasha, Wisconsin, and the Shiner Center in Appleton, Wisconsin. (Def. PFOF ¶¶ 2, 9.) On August 8, 2003, Goodwill hired Wangnet to work as a product sorter at the Shiner Center. (DPFOF ¶¶ 8-9.)

Goodwill, in cooperation with the Department of Corrections, has established a program to allow low-risk inmates to work for Goodwill, in an attempt to provide them with job experience and a chance to develop social skills that will benefit them upon their release from incarceration. (DPFOF ¶¶ 18-19.) Those inmates who participate in the work release program are subject to different guidelines than the non-inmate employees of Goodwill; for example, any problems involving the inmate workers are to be reported to the Corrections Work Release Coordinator. (DPFOF ¶ 23.) Participants in the program have sorted donated items at the Shiner Center, at times, in conjunction with Wangnet. (DPFOF ¶¶ 20-21.)

On March 19, 2004, one of the program participants found a plastic sex toy while sorting through items, showed it to Wangnet, and made "suggestive remarks" to her. (DPFOF ¶ 24.) Although she did not report the incident to her supervisor, Keith Fergot, Wangnet called in sick the following day and did not return to work for several days thereafter. (DPFOF ¶ 6, 25.) However, on March 22, 2004, Wangnet's boyfriend, who also worked at Goodwill, reported the incident to Fergot. (DPFOF ¶ 26.) Goodwill immediately conducted an investigation that resulted in the removal of the accused inmate from the program. (*Id.*)

At or around this same time, Fergot received a letter from Susan C. Nielsen, a licensed clinical social worker and certified trauma specialist at Family Services, advising him that Wangnet was being treated for Post-Traumatic Stress Disorder (DPFOF ¶ 27; Ex. F at 1.) Nielsen's letter,

3

which predated the "sex toy" incident, noted that if Wangnet witnessed employees arguing, it could trigger "intense intrusive thoughts and flashbacks to times when she was in danger." (*Id.*) Nielson requested that if such an incident occurred, Wangnet be allowed to go into a quiet room by herself or with a supportive co-worker to "ground herself." (*Id.*)

Following the "sex toy" incident, Fergot received a second letter from Nielsen dated March 22, 2004, in which Nielsen informed Fergot that Wangnet was afraid of the inmates working with her, and that a transfer to Goodwill's Menasha facility could be beneficial to her. (DPFOF ¶ 27, Ex. G at 1.) On March 29, 2004, Wangnet returned to work and was given the option of moving to transfer to the Menasha store. (DPFOF ¶ 28.) Noting that the offending program participant had been removed, she declined the offer of transfer because she preferred to work at the Shiner Center. (DPFOF ¶ 29.)

On April 9, 2004, Wangnet took a leave of absence due to family issues. (DPFOF ¶ 11.) She then terminated her employment on April 30, 2004, citing only personal reasons. (DPFOF ¶ 30.) Several months later, she requested and was granted reinstatement, and returned to her former position at the Shiner Center with the same job duties on September 1, 2004. (DPFOF ¶¶ 15-16.)

On September 16, 2004, Goodwill supervisory staff held general meetings with employees and supervisory staff to discuss the Inmate program and the policies and procedures associated with it. (DPFOF ¶ 31.) At that time, Wangnet reported to Fergot that an inmate involved in the program approached her several times and requested that she write to him at the Wisconsin Correctional Center. (DPFOF ¶¶ 34-35.) Wangnet reported feeling threatened and intimidated as a result. (*Id.*) Immediately after Wangnet told Fergot of this incident, Goodwill staff spoke to Wangnet further about it, and conducted an investigation. (DPFOF ¶¶ 36-37.) The accused inmate was removed

4

from the program the same day.  (DPFOF ¶ 38.)  Despite this fact, Wangnet did not work at Goodwill after September 16, 2004.  (DPFOF ¶ 40.)

Wangnet thereafter filed a claim against Goodwill, with the Equal Rights Division ("ERD") of the Wisconsin Department of Workplace Development, for violating the Wisconsin Fair Employment Law by retaliating against her and subjecting her to a hostile work environment. (DPFOF ¶ 46; *See* Ex. M at 1.)  Though given the chance to amend the claim to include the charge of constructive discharge, Wangnet chose not to do so.  (DPFOF ¶ 46.)  Following its investigation of her complaint, the ERD dismissed all her claims finding that there was no probable cause to believe that Goodwill engaged in or permitted sexual harassment of Wangnet, or that it had retaliated against her because of her opposition to a discriminatory practice.  (DPFOF ¶ 48, Ex. M at 3-4.)

On November 13, 2006, Wangnet filed this action claiming that Goodwill discriminated against her on account of her gender by subjecting her to a hostile work environment, retaliated against her because of her opposition to such conditions and constructively discharged her. (Complt. ¶¶ 27-30.)  Although she admits to having voluntarily communicated by telephone and through letters with a different inmate participant with whom she had worked (DPFOF ¶ 44), Wangnet contends that Goodwill was obligated to terminate its inmate placement program with the Department of Corrections because of her complaints of sexual harassment.  Furthermore, despite the fact that Goodwill never subjected Wangnet to a demotion, a decrease in pay, or an increase in her job duties (DPFOF ¶ 47), she claims it retaliated against her for her opposition to the program. And notwithstanding the fact that she failed to file a constructive discharge claim before the ERD, she has included such a claim in her complaint.  This despite the fact that Goodwill immediately

5

removed the inmates alleged to have harassed her from the program. It is difficult to imagine a case more lacking in merit.

## ANALYSIS

**1. Hostile Work Environment**

Title VII of the Civil Rights Act of 1964 prohibits any action by an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Discrimination under § 2000e-2(a)(1) may be direct and specific, or it may take the form of a work environment hostile to a plaintiff. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64-65 (1986). To succeed on a hostile work environment claim, a plaintiff must show the following:

> (1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the harassment was based on her sex; (3) the sexual harassment had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile, or offensive working environment that seriously affected her psychological well-being; and (4) a basis for employer liability exists.

*Phelan v. Cook County*, 463 F.3d 773, 783 (7th Cir. 2006) (internal citation omitted).

A "work environment cannot be described as 'hostile' for purposes of Title VII unless a reasonable person would find it offensive and the plaintiff actually perceived it as such. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir. 2000) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). Moreover, where an employee alleges that one or more co-employees created the hostile work environment, a basis for employer liability exists only if the employer negligently discovered or negligently attempted to remedy the situation. *Phelan*, 463 F.3d at 783

(citing *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006)).  Although Wangnets claim fails on multiple grounds in addition to employer liability, I will address it first.

Where a hostile work environment is co-employee-created, an employer can avoid liability if it can show that it took "prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000) (citing *Saxton v. American Tel. & Telegraph Co.*, 10 F.3d 526 535 (7th Cir. 1993)).  For example, in *Tutman*, the Seventh Circuit found that where a hostile work environment was created by a co-employee's use of a racial epithet and a possible threat of violence, the defendant employer was able to avoid liability because it promptly conducted an investigation, and issued a letter of reprimand, and required the employee to undergo sensitivity training. *Tutman*, 209 F.3d at 1048-49.

In the instant case, immediately after receipt of each report from Wangnet (or her boyfriend) alleging harassment by an inmate, Goodwill conducted a swift investigation and removed the accused inmate from the work release program.  Such prompt action was reasonably calculated to prevent further instances of harassment.  Furthermore, Goodwill exceeded its legal obligation to reasonably prevent further instances of harassment in offering Wangnet the opportunity to transfer to another facility, immediately following her return to work after the first incident.  Therefore, Wangnet has not shown a basis for assigning liability to Goodwill, and her hostile work environment claim necessarily fails.

Even if there were a basis for employer liability, it is clear that the incidents alleged do not rise to the level of conduct actionable under Title VII.  Here, as in most hostile work environment cases, the issue is whether the allegedly improper conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

7

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation and citation omitted). In evaluating the severity and pervasiveness of the conduct, the court considers all relevant circumstances, including but not limited to, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance," will determine whether a work environment is hostile. *Id.* at 23. No one factor is outcome-determinative. *Id.*

The court must also take into account the social context of the alleged harassment, "'lest Title VII become a general civility code for the American workplace.'" *Hostetler*, 218 F.3d at 807 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). As the *Hostetler* Court indicated, the "line between a merely unpleasant working environment on the one hand and a hostile or deeply repugnant one on the other" is thin. *Id.* (internal citation omitted). Analysis of a hostile work environment claim therefore typically involves subtle gradations and fact-specific normative evaluations. The Seventh Circuit has provided some guidance, however, by at least marking out the ends of the continuum. "On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers." *Patton v. Keystone RV Co.*, 455 F.3d 812, 816 (7th Cir. 2006) (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (citations omitted)).

Considered by these standards, Wangnet's allegations do not amount to a hostile work place. Wangnet first claims one inmate employee showed her a sex toy he found among the items they were sorting and made "suggestive remarks." (DPFOF ¶ 24.) In her initial report of the incident,

8

however, Wangnet made no mention of any inappropriate remarks directed at her, and even to this day she has failed to reveal what the inmate said that she found so offensive. She also claims that on another occasion, a second inmate employee approached her several times and asked her to write to him in prison. (DPFOF ¶ 34.) She claims she felt threatened and intimidated by the incident. (DPFOF ¶ 35.) But being asked to write a letter, or even go out on a date, unless the request is made repeatedly and after it is made clear that the invitation is unwanted, does not constitute harassment. Wangnet claims only that the request that she write was made several times, and the record does not disclose how she responded to it. As already noted, she does admit that she voluntarily communicated by telephone and through letters with a different inmate participant with whom she had worked. (DPFOF ¶ 44.) It is thus not even clear that the incidents alleged by her even amount to sexual harassment in its most mild form.

But even if they do, these incidents fall far short of demonstrating conduct that is severe or pervasive enough to create an objectively hostile work environment. The Seventh Circuit has held that two occasions on which sexually suggestive remarks are made, even when combined with the display of an offensive picture, are not sufficient to establish a hostile work environment. *See Sorrell v. Illinois E.P.A.*, 105 F. App'x 115, 116 (7th Cir. 2004) (unpublished decision). In *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996), the Court found no hostile work place when a female employee "was the object of three sexually suggestive comments over a three month period." Even an employee who suffered eight separate occasions of gender-related commentary was held not to have endured an objectively hostile work environment. *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002). Further, the use of a suggestive tone when asking to "'make a house call,'" even in conjunction with questions about underwear color and

9

pulling back clothing, does not create an objectively hostile work environment. *McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004). In light of these cases, Wangnet's complaints do not even approach the kind of showing required to establish a hostile work place claim.

The fact that Wangnet claims she felt threatened and intimidated does not add to her case. The test is an objective one: a "work environment cannot be described as 'hostile' for purposes of Title VII unless a reasonable person would find it offensive and the plaintiff actually perceived it as such. *Hostetler v. Quality Dining, Inc.*, 218 F.3d at 807. The incidents described by Wangnet are not such they would interfere in a reasonable person's ability to work or affect her well-being. Alone or in combination, these two incidents are not sufficient to demonstrate a hostile workplace. Accordingly, for this reason as well, Wangnet's hostile workplace claim will be dismissed.

**2. Constructive Discharge**

Having failed to assert a constructive discharge claim before the ERD, Wangnet has failed to exhaust her administrative remedies as to that claim and is barred from pursuing it now. *See Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir.1995) ("Generally a plaintiff may not bring claims under Title VII that were not originally brought among the charges to the EEOC."). But even if the claim was not barred, it would fail as a matter of law.

Title VII of the Civil Rights Act of 1964 prohibits an employer from constructively discharging its employee by creating or allowing for "working conditions . . . so intolerable as a result of unlawful discrimination that a reasonable person would be forced into involuntary resignation." *Tutman*, 209 F.3d at 1050 (citing *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 517 (7th Cir. 1996)). The conduct necessary to sustain a claim of constructive discharge, however, is even higher than the serve or pervasive standard under a claim to a hostile work environment.

10

*Tutman*, 209 F.3d at 1050 (citing *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998)). Since Wangnet has failed to establish a hostile work environment, it necessarily follows that she cannot show working conditions so intolerable that a reasonable person would have been forced to quit. Summary judgment will therefore be granted on this claim also.

**3. Retaliation**

Finally, Wangnet claims she was retaliated against for filing complaints regarding the inmate's offensive conduct. To demonstrate a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *See Sweeney v. West*, 149 F.3d 550, 555 (7th Cir. 1998) (citing *McKenzie*, 92 F.3d at 483. Here, Wangnet alleges that Goodwill continued its inmate work release program in retaliation for her complaints about inmate employee behavior.

This argument fails for many reasons, including the fact that there is no showing Wangnet ever complained about the program or suggested that it be discontinued. Even if she had made such a request, however, Goodwill's refusal to permit her to determine its programs would not amount to retaliation. Goodwill's work release program was in existence when Wangnet was originally hired in August of 2003. The program remained in existence from that time through her final day of work on September 16, 2004, and remained in existence beyond that date. Continuing such a program does not constitute an "adverse employment action." And of course, Wangnet has shown no causal link between the continuation of the program and her vague reports of harassment. Those complaints were swiftly dealt with through the immediate termination of the offending inmate. Summary judgment will therefore be granted on this claim as well.

11

## CONCLUSION

Wangnet has not demonstrated that she suffered under an objectively hostile work environment. Even if she could, Goodwill would still be entitled to summary judgment because it took prompt and appropriate action to remedy Wangnet's complaints and prevent future harassment. Therefore Wagnet's hostile work environment claim under Title VII fails. As a consequence, her constructive discharge claim also fails as a matter of law. Finally, Wangnet's retaliation claim fails because she has not established any of the elements of such a claim.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment is **GRANTED**. Plaintiffs' claims are dismissed with prejudice, and the Clerk is directed to enter judgment forthwith.

Dated this   18th   day of February, 2008.

                                              s/ William C. Griesbach
                                              William C. Griesbach
                                              United States District Judge